Robert C. Moest, Of Counsel, SBN 62166
**THE BROWN LAW FIRM, P.C.**
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone: (310) 915-6628
Facsimile: (310) 915-9897
Email: rmoest@aol.com

*Counsel for Plaintiff*

[Additional Counsel on Signature Block]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY BEALL, Derivatively on Behalf of Nominal Defendant SUNPOWER CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PETER FARICY, NATHANIEL ANSCHUETZ, JONATHAN BRAM, JONATHAN FIELDSEND, VINAYAK HEGDE, AUDREY ZIBELMAN, STEVEN LOUDEN, NATHALIE PORTES-LAVILLE, VINCENT STOQUART, GUTHRIE DUNDAS, and ELIZABETH EBY,<br><br>　　　　　Defendants,<br><br>　　and<br><br>SUNPOWER CORPORATION,<br><br>　　　　　Nominal Defendant. | Case No. _____<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

---

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## <u>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Ashley Beall ("Plaintiff"), by and through her undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant SunPower Corporation ("SunPower" or the "Company"), against certain current and former members of the Company's Board of Directors (the "Board") and certain of its executive officers seeking to remedy the Individual Defendants' (defined below) violations of federal law and breaches of fiduciary duties. Plaintiff alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Defendants' publicly available documents, United States Securities and Exchange Commission ("SEC") filings, press releases published by and regarding SunPower, legal filings, news reports, securities analysts' reports about the Company, the securities class actions *Craven v. SunPower Corporation, et al.,* Case No. 5:23-cv-05544-EJD (N.D. Cal.) and *Simpson v. SunPower Corporation, et al.,* 3:23-cv-06302 (N.D. Cal.) (the "Securities Class Actions"), and other publicly available information.

## <u>NATURE OF THE ACTION</u>

1.      This is a shareholder derivative action brought by Plaintiff on behalf of SunPower against certain of its officers and current and former members of the Board (the "Individual Defendants")[1] for breaches of their fiduciary duties between at least March 9, 2023 and October

---

[1] The Individual Defendants are Peter Faricy, Nathaniel Anschuetz, Jonathan Bram, Jonathan Fieldsend, Vinayak Hegde, Audrey Zibelman, Steven Louden, Nathalie Portes-Laville, Vincent Stoquart, Guthrie Dundas, and Elizabeth Eby. The Individual Defendants are sometimes referred to herein by their last name.

24, 2023 (the "Relevant Period") and violations of federal securities laws, including through the issuance of materially false and misleading statements in the Company's annual proxy statements filed with the SEC on March 31, 2023 (the "2023 Proxy").

2.      SunPower is an American provider of photovoltaic solar energy generation systems and battery energy storage products, primarily for residential customers.

3.      On October 24, 2023, after the market closed, SunPower filed a Form 8-K with the SEC (the "October 24 8-K"), revealing a material weakness in its internal controls and the impending restatement of certain financial statements. The October 24 8-K disclosed that investors should no longer rely upon the audited financial statements included in the Company's Form 10-K for the period ended January 1, 2023 (the "2022 10-K"), the unaudited financial statements included in the Company's Form 10-Q for the period ended April 2, 2023 (the "Q1 2023 10-Q"), the unaudited financial statements included in the Company's Form 10-Q for the period ended July 2, 2023 (the "Q2 2023 10-Q"), and any communications describing or based upon those financial statements. The Company added that it planned to restate the 2022 10-K, the Q1 2023 10-Q, and the Q2 2023 10-Q. SunPower explained that it had overstated the value of consignment inventory of certain microinverter components, causing it to understate the associated cost of revenue. The October 24 8-K further revealed that, consequently, SunPower's management had concluded that a material weakness existed in the Company's internal control over financial reporting.

4.      On this news, the Company's share price fell $0.90 per share, or 18.1%, to close at $4.06 per share on October 25, 2023, on unusually high trading volume.

5.      Throughout the Relevant Period, Defendants made materially false and/or misleading statements and failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants misled investors by failing to disclose that due to a material weakness in its internal control over financial reporting, the Company had inaccurately reported cost of revenue and inventory metrics and, as a result of the foregoing, the Company was reasonably likely to incur significant charges to restate prior reporting.

6.      As a result of the foregoing, the Securities Class Actions were filed against the Company as well as Faricy, Dundas, and Eby, exposing SunPower to massive class-wide liability.

## **JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") over the claims asserted herein for violations of the Exchange Act (15 U.S.C. §§ 78n(a) and Rule 14a-9 (17 C.F.R.§240.14a-9) promulgated thereunder by the SEC, and Sections 10(b) and 21D of the Exchange Act (15 U.S.C. § § 78j(b), 78u-4(f)).

8.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

9.      This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.      In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail, and the facilities of a national securities market.

11.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because the Company is incorporated in this District, a substantial portion of the transactions and wrongs complained of herein occurred in this District, Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

# PARTIES

*Plaintiff*

12.     Plaintiff is, and has been at all relevant times, a shareholder of SunPower.

*Nominal Defendant*

13.     Nominal Defendant SunPower is incorporated under the laws of Delaware with its principal executive offices in Richmond, California.   SunPower's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the symbol "SPWR."

*The Individual Defendants*

14.     Peter Faricy has served as SunPower's Chief Executive Officer ("CEO") and as a Company director since 2021.  Faricy is named as a defendant in the Securities Class Actions and personally signed false and misleading documents detailed herein.

15.     Nathaniel Anschuetz has served as a Company director since 2021 and personally signed false and misleading documents detailed herein.

16.     Jonathan Bram has served as a Company director since 2022 and personally signed false and misleading documents detailed herein.

17.     Jonathan Fieldsend has served as a Company director since 2022 and personally signed false and misleading documents detailed herein.

18.     Vinayak Hegde has served as a Company director since 2021 and personally signed false and misleading documents detailed herein.

19.     Audrey Zibelman has served as a Company director since 2023.

20.     Steven Louden has served as a Company director since 2023.

21.     Nathalie Portes-Laville has served as a Company director since 2021 and personally signed false and misleading documents detailed herein.

22.     Guthrie Dundas was the Company's Interim Chief Financial Officer ("CFO") from August 29, 2022 through May 29, 2023.  Dundas is named as a defendant in the Securities Class Actions and personally signed false and misleading documents detailed herein.

23.     Elizabeth Eby has served as the Company's CFO since May 30, 2023. Faricy is named as a defendant in the Securities Class Actions.

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

24.     By reason of their positions as officers and/or directors of SunPower, and because of their ability to control the business and corporate affairs of SunPower, the Individual Defendants owed SunPower and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage SunPower in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of SunPower and its shareholders so as to benefit all shareholders equally.

25.     Each director and officer of the Company owes to SunPower and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligation of fair dealing.

26.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of SunPower, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

27.     To discharge their duties, the officers and directors of SunPower were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

28.    Each Individual Defendant, by virtue of his or her position as a director and/or officer owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of SunPower, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

29.    As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, financial statements, products, management, internal controls, earnings, and present and future business prospects, including the dissemination of false and/or materially misleading information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful, accurate, and fairly presented information.

30.    To discharge their duties, the officers and directors of SunPower were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company.  By virtue of such duties, the officers and directors of SunPower were required to, among other things:

(a) ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware and the United States, and pursuant to SunPower's own Code of Business Conduct and Ethics (the "Code of Conduct");

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) remain informed as to how SunPower conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d) establish and maintain systematic and accurate records and reports of the business and internal affairs of SunPower and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e) maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that SunPower's operations would comply with all applicable laws and SunPower's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f) exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g) refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h) examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

31.     Each of the Individual Defendants further owed to SunPower and the shareholders the duty of loyalty requiring that each favor SunPower's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence, or knowledge of the affairs of the Company to gain personal advantage.

32.     At all times relevant hereto, the Individual Defendants were the agents of each other and of SunPower and were at all times acting within the course and scope of such agency.

33.     Because of their advisory, executive, managerial, and directorial positions with SunPower, each of the Individual Defendants had access to adverse, non-public information about the Company.

34.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by SunPower.

35.     The Individual Defendants, because of their positions with SunPower, possessed the power and authority to control the contents of the Company's reports to the SEC, press

releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports, presentations, and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## SUNPOWER'S CODE OF BUSINESS CONDUCT AND ETHICS

36.     SunPower's Code of Conduct expressly applies to all of the Individual Defendants. The Code of Conduct states that SunPower's "incentive plans and programs require compliance with the law and this code as a condition of participation and receiving an award."

37.     The Code of Conduct states further that:

As a publicly traded company, SunPower has an obligation to maintain accurate business and financial records. Each one of us has an obligation to ensure the records we generate are accurate. Never misstate facts, omit critical information or modify records or reports in any way to mislead others, and never assist others in doing so. All financial transactions must be correctly and timely recorded in compliance with SunPower's internal controls and procedures. No unrecorded funds or assets may be created or maintained for any purpose. Creating false or misleading records is strictly prohibited and may violate a number of laws, including the Sarbanes-Oxley act, which may trigger both financial and criminal liability for the employee and/or SunPower.

## SUNPOWER'S AUDIT COMMITTEE CHARTER

38.     Pursuant to SunPower's Audit Committee Charter, the purpose of the Audit Committee is to "provide oversight of the Company's accounting and financial reporting processes" and *inter alia* "assist the Board in the oversight of [ ] the integrity of the Company's financial statements [and] the Company's compliance with legal and regulatory requirements."

---

39.     Pursuant to the Audit Committee Charter, the Audit Committee has *inter alia* the responsibility to:

> review (i) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles or practices as suggested by management or the independent auditor; (ii) major issues as to the adequacy of the Company's internal controls and any special compensating procedures or audit steps adopted in light of material control deficiencies and material weaknesses in the Company's internal control over financial reporting; (iii) analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; (iv) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements; and (v) an annual report furnished by Company management identifying key risks to the Company's worldwide business;

> discuss with management and the independent auditor the Company's annual audited financial statements and quarterly unaudited financial statements and review the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" prior to filing the Company's annual report on Form 10-K and quarterly reports on Form 10-Q, respectively, with the SEC and, with respect to the annual financial statements, the appropriateness and quality of accounting and auditing principles and practices, including any "critical audit matters" (as that term is defined in PCAOB AS 3101), as well as the adequacy of internal controls that could significantly affect the Company's financial statements;

> discuss with management and the independent auditor the Company's earnings press releases (paying particular attention to the use of any "pro forma" or "adjusted" non-GAAP information), the type and presentation of information included in the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies…

> report regularly to the Board a summary of matters addressed at Committee meetings, any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements…

> review the independent financial statement and internal control audit by: (i) reviewing the independent auditor's proposed audit scope and approach; (ii) discussing with the Company's independent auditor the financial statements, the Company's internal control over financial reporting and the audit findings, including any significant adjustments, management judgments and accounting estimates, significant new accounting policies and disagreements with management,

any deficiencies, significant deficiencies or material weaknesses and any other matters described in PCAOB Auditing Standard No. 16 or required by the applicable SEC and NASDAQ Rules; and (iii) reviewing reports submitted to the Committee by the independent auditor in accordance with applicable SEC Rules;

review before release the unaudited quarterly operating results in the Company's quarterly earnings release;

recommend to the Board whether to include the annual audited financial statements in the Company's annual report on Form 10-K;

review and discuss with the Chief Executive Officer, Chief Financial Officer and the independent auditor (i) the adequacy and effectiveness of the Company's internal controls over financial reporting including any significant deficiencies, material weaknesses and significant changes in internal controls which are reasonably likely to affect the Company's ability to record, process, summarize and report financial information or were reported to the Committee by management and any fraud involving management or other employees who have a significant role in the Company's internal controls, (ii) the results of the internal control audit by the independent auditor, (iii) any special audit steps adopted in light of any material control deficiencies and (iv) the effectiveness of the Company's disclosure controls and procedures.

40.    With respect to regulatory compliance, the Audit Committee Charter states that the Committee "shall" "oversee compliance with the Company's Code of Business Conduct and Ethics" and "review the Company's compliance with laws and regulations, including major legal and regulatory initiatives, and any major litigation or investigations against the Company that may have a material impact on the Company's financial statements…"

41.    With respect to risk oversight, the Audit Committee Charter states that the Committee "shall…provide assistance to the Board in overseeing, and provide guidance to management on, the identification, evaluation and mitigation of major strategic, operational, regulatory, accounting and financial reporting, informational and external risks inherent in the Company's business worldwide…"

## **SUBSTANTIVE ALLEGATIONS**

42.    On April 28, 2011, SunPower and TotalEnergies Solar INTL SAS, formerly

known as Total Gas & Power USA, SAS ("TE Solar"), a subsidiary of TotalEnergies SE ("TotalEnergies"), entered into a Tender Offer Agreement (the "Tender Offer Agreement"). Pursuant to the Tender Offer Agreement, dated June 21, 2011, TE Solar purchased, in a cash tender offer, approximately 60% of SunPower's then outstanding shares of common stock (the "Tender Offer"). In connection with the Tender Offer, SunPower and TE Solar entered into an Affiliation Agreement that governed the relationship between TE Solar and SunPower following the close of the Tender Offer (as amended to date, the "Affiliation Agreement").

43.     On May 24, 2022, TE Solar and TotalEnergies Gaz & Electricité Holdings France SAS ("Total Gaz") agreed to sell 50% less one unit of the equity interests in Sol Holding, LLC ("HoldCo") to GIP III Sol Acquisition, LLC ("GIP Sol") (the "Transaction"). In connection with the completion of the Transaction on September 12, 2022, TotalEnergies Renewables USA, LLC ("TotalEnergies Renewables"), GIP Sol, and HoldCo entered into a Letter Agreement concerning certain governance rights with respect to HoldCo and the shares of SunPower's common stock held directly by HoldCo (the "Letter Agreement"). Specifically, TotalEnergies Renewables and GIP Sol agreed to, among other things, take all actions necessary to cause HoldCo to designate and elect to SunPower's Board such individuals as HoldCo is entitled to appoint pursuant to the Affiliation Agreement; provided, however, that for so long as HoldCo is entitled to appoint at least five directors to our Board, GIP Sol shall have the right to appoint two of such five directors.

44.     In accordance with the terms of the Affiliation Agreement, the Board currently has nine members, composed of SunPower's President and CEO, five directors designated by HoldCo, and three independent directors.

45.     The TE Solar-designated members of the Board include Nathalie Portes-Laville, Vincent Stoquart, and Jonathan Fieldsend.

46.     The GIP Sol designated members of the Board include Jonathan Bram and Nathaniel Anschuetz.

47.     On March 9, 2023, SunPower filed the 2022 10-K and reported the following about the cost of revenues:

| (In thousands, except percentages) | January 1, 2023 | % Change | January 2, 2022 | % Change | January 3, 2021 |
|---|---|---|---|---|---|
| **Fiscal Year Ended** | | | | | |
| **Cost of Revenues** | | | | | |
| Total cost of revenues | $1,377,169 | 53% | $902,718 | 23% | $ 733,371 |
| **Gross Margin** | | | | | |
| Total gross margin | 21% | | 20% | | 16% |

Our total cost of revenues increased by 53% during fiscal 2022 as compared to fiscal 2021, as a result of organic revenue growth from our residential businesses across all channels and the Blue Raven acquisition in the fourth quarter of 2021, as well as increasing material, freight, and labor costs due to inflationary pressures. This was partially offset by a decrease in cost of revenues as a result of the wind-down of our Light Commercial business beginning in the first quarter of fiscal 2022.

48.     Regarding inventories, the Company reported the following in the 2022 10-K:

| Inventories | As of | |
|---|---|---|
| (In thousands) | January 1, 2023 | January 2, 2022 |
| Photo-voltaic modules | $ 156,292 | $ 130,671 |
| Microinverters | 46,088 | 24,040 |
| Energy Storage | 63,327 | 26,849 |
| Other solar power system component materials | 51,108 | 32,872 |
| Inventories[1] | $ 316,815 | $ 214,432 |

[1]Photovoltaic modules are classified as finished goods, while the remaining components of total inventories are classified as raw materials.

49.     In the 2022 10-K, the Company also included a report on its internal control over

financial reporting, which stated:

> Management is responsible for establishing and maintaining adequate internal control over financial reporting, as defined in Exchange Act Rule 13a-15(f). Management conducted an evaluation of the effectiveness of our internal control over financial reporting using the criteria described in Internal Control-Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (2013 framework) ("COSO"). Based on this evaluation, management concluded that our internal control over financial reporting was effective as of January 1, 2023 based on the criteria described in Internal Control-Integrated Framework issued by COSO. Management reviewed the results of its assessment with our Audit Committee.

50.  Defendants Faricy, Anschuetz, Bram, Fieldsend, Hegde, Portes-Laville, and Stoquart all signed the 2022 10-K, which was materially false and misleading.

51.  Faricy and Dundas also signed certifications under the Sarbanes-Oxley Act that were attached to the 2022 10-K ("SOX Certifications"). The SOX Certifications stated:

> I have reviewed this Annual Report on Form 10-K of SunPower Corporation;

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

> Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

> The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15I and 15d-15I) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

> Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

> Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the

preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

I Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

52.     On March 31, 2023, the Company filed the 2023 Proxy wherein Defendants solicited shareholder votes in favor of four proposals, including the re-election of Defendants Faricy and Anschuetz, and non-binding approval of the compensation paid to SunPower's named executive officers.

53.     The 2023 Proxy states that Natera adopted the Code of Conduct that applies to all Defendants.

54.     The 2023 Proxy states that the Audit Committee is required to "provide oversight of our accounting and financial reporting processes"; "assist the Board in the oversight of [ ] the integrity of our financial statements [ ] and [ ] the performance of our internal audit function"; and "oversee management's identification, evaluation, and mitigation of major risks to our

company."

55.     The 2023 Proxy omitted that the Company was beset with compliance problems that posed significant risks of harm, and that the Board lacked a system to oversee mission-critical compliance risks related to material weaknesses in its internal control over financial reporting, in particular that the Company had inaccurately reported cost of revenue and inventory metrics and, as a result, was reasonably likely to incur significant charges to restate prior reporting.

56.     The 2023 Proxy was also materially false and misleading because it failed to disclose the following: (1) contrary to the 2023 Proxy's descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements and violate the law, and thus the Defendants on the Board were breaching their fiduciary duties; and (2) the Defendants on the Board at that time who were breaching their fiduciary duties were improperly interested in increasing their unjust compensation.

57.     The false and misleading elements of the 2023 Proxy were material to stockholders in voting on the Board's proposals, particularly with respect to stockholders' consideration of the reelection of incumbent directors and the approval of executive compensation.

58.     On May 3, 2023, SunPower filed the Q1 2023 10-Q with the SEC, which Dundas signed. In the Q1 2023 10-Q, SunPower reported the following regarding cost of revenues:

| | Three Months Ended | | |
|---|---|---|---|
| **(In thousands, except percentages)** | **April 2, 2023** | **April 3, 2022** | **% Change** |
| **Cost of Revenue** | | | |
| Total cost of revenues | $ 376,767 | $ 277,968 | 36% |
| **Gross Margin** | | | |
| Total gross margin | 15% | 21% | (6)% |

59.     Regarding inventories, the Q1 2023 10-Q reporting the following:

| Inventories | As of | |
|---|---|---|
| (In thousands) | April 2, 2023 | January 1, 2023 |
| Photo-voltaic modules | $ 206,083 | $ 156,292 |
| Microinverters | 65,388 | 46,088 |
| Energy Storage Systems | 59,996 | 63,327 |
| Other solar power system component materials | 50,380 | 51,108 |
| Inventories[1] | $ 381,847 | $ 316,815 |
| [1]Photovoltaic modules are classified as finished goods, while the remaining components of total inventories are classified as raw materials. | | |

60.     Defendants Faricy and Dundas signed SOX Certifications that were appended to the Q1 2023 0-Q. The SOX Certifications were substantively similar or the same as those attached to the 2022 10-K described above.

61.     On August 2, 2023, SunPower filed the Q2 2023 10-Q with the SEC, which Defendant Eby signed. In the Q2 2023 10-Q, SunPower reported the following regarding costs of revenues:

| (In thousands, except percentages) | Three Months Ended | | | Six Months Ended | | |
|---|---|---|---|---|---|---|
| | July 2, 2023 | July 3, 2022 | % Change | July 2, 2023 | July 3, 2022 | % Change |
| Cost of Revenues | | | | | | |
| Total cost of revenues | $ 399,724 | $ 336,273 | 19% | $769,667 | $614,241 | 25% |
| Gross Margin | | | | | | |
| Total gross margin | 14% | 20% | (6)% | 15% | 20% | (5)% |

62.     Regarding inventory, SunPower reported the following in the Q2 2023 10-Q:

| (In thousands) | As of | |
| --- | --- | --- |
| | July 2, 2023 | January 1, 2023 |
| Photovoltaic modules | $ 244,068 | $ 156,292 |
| Microinverters | 68,832 | 46,088 |
| Energy storage systems | 58,670 | 63,327 |
| Other solar power system component materials | 52,470 | 51,108 |
| Inventories[1] | $ 424,040 | $ 316,815 |

[1]Photovoltaic modules are classified as finished goods, while the remaining components of total inventories are classified as raw materials.

63.     Defendants Eby and Dundas signed SOX Certifications that were appended to the Q2 2023 10- Q. The SOX Certifications were substantively similar or the same as those attached to the 2022 10-K described above.

64.     The above statements were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) due to a material weakness in its internal control over financial reporting, the Company had inaccurately reported cost of revenue and inventory metrics; (2) as a result of the foregoing, the Company was reasonably likely to incur significant charges to restate prior reporting; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

65.     The Individual Defendants knew that each of the public documents and statements identified above and issued or disseminated in the name of the Company were materially false

and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. The Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding SunPower's financials, their control over, and/or receipt and/or modification of the Company's materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunPower's operations, participated in the fraudulent scheme alleged herein.

66.     On October 24, 2023, SunPower filed a Form 8-K with the SEC announcing that its previous financial statements could not be relied upon. The October 24 8-K stated, in relevant part:

> On October 19, 2023, the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of SunPower Corporation (the "Company"), based upon the recommendation of management, determined that the Company's (i) audited financial statements included in the Company's Annual Report on Form 10-K for the period ended January 1, 2023, filed with the U.S. Securities and Exchange Commission (the "SEC") on March 10, 2023 (the "Form 10-K"), (ii) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q for the quarterly period ended April 2, 2023, filed with the SEC on May 3, 2023 (the "Q1 2023 Form 10-Q"), and (iii) unaudited financial statements included in the Company's Quarterly Report on Form 10-Q for the quarterly period ended July 2, 2023, filed with the SEC on August 2, 2023 (the "Q2 2023 Form 10-Q," and collectively, the "Affected Periods"), as well as the relevant portions of any communication which describe or are based on such financial statements, should no longer be relied upon. The Company plans to restate, as soon as practicable, the financial statements for the Affected Periods in amendments to the Form 10-K, the Q1 2023 Form 10-Q, and the Q2 2023 Form 10-Q, respectively (collectively, the "Restatement").

> In connection with the preparation of the financial statements, the Company preliminarily determined that the value of consignment inventory of microinverter components at certain third-party locations had been overstated in the Affected Periods in the range of approximately $16 million to $20 million, resulting in the associated cost of revenue being understated. At this time, the Company has not fully completed its review, and the expected financial impact of the errors described

above is preliminary and subject to change. Additionally, the Company is correcting other immaterial errors in the Affected Periods.

Upon evaluation of the impact to Affected Periods, the Company's management has concluded that in light of the matters described above, a material weakness exists in the Company's internal control over financial reporting. The Company's remediation plan with respect to such material weakness will be described in more detail in the Company's amended Form 10-K.

The Company's management also has concluded that the Company's disclosure controls and procedures and internal control over financial reporting were not effective as of January 1, 2023 and the Company's disclosure controls and procedures were not effective as of April 2, 2023 and July 2, 2023. In addition, as a result of the material weakness, Ernst & Young LLP, the Company's independent registered public accounting firm for the year ended January 1, 2023 ("EY"), has determined that its report on internal control over financial reporting as of January 1, 2023, dated March 9, 2023 and included in the Company's Annual Report on Form 10-K for the year ended January 1, 2023 filed with the SEC on March 10, 2023, will be revised to an adverse opinion that internal control over financial reporting was ineffective and reissued.

67.     On this news, the Company's share price fell $0.90 per share, or 18.1%, to close at $4.06 per share on October 25, 2023, on unusually high trading volume.

## HARM TO THE COMPANY

68.     As a direct and proximate result of the Individual Defendants' misconduct outlined herein, the Company has lost and expended, and will continue to lose and expend, millions of dollars.

69.     These costs include, *inter alia*: (i) legal fees in connection with the Securities Class Actions, including attorneys', accountants', experts', and investigators' fees; (ii) costs to implement measures to remedy the material weaknesses in SunPower's internal controls over financial reporting; and (iii) substantial compensation and benefits paid to the Individual Defendants, who breached their fiduciary duties to the Company.

70.     As a direct and proximate result of the Individual Defendants' misconduct and breach of fiduciary duties, the Company has also suffered and will continue to suffer a loss of

reputation and goodwill, and a liar's discount regarding SunPower's stock in the future.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

71.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breach of fiduciary duties by the Individual Defendants.

72.     SunPower is named solely as a nominal party in this action.  This is not a collusive action to confer jurisdiction on this Court that it would otherwise not have.

73.     Plaintiff is a current shareholder of SunPower and was a continuous shareholder of the Company during the period of the Individual Defendants' wrongdoing alleged herein. Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

74.     At the time this action was commenced, the nine-member Board was comprised of Defendants Faricy, Anschuetz, Bram, Fieldsend, Hegde, Zibelman, Louden, Portes-Laville, and Stoquart (collectively, the "Director Defendants").  Accordingly, Plaintiff is only required to show that five members of the current Board (the "Demand Board") cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

75.     According to the Company's 2023 Proxy Statement, filed with the SEC on March 31, 2023, SunPower concedes that Defendant Faricy, Anschuetz, Bram, Fieldsend, Portes-Laville, and Stoquart – *i.e.*, six of the current nine members of the Demand Board – are not independent.

76.     Faricy is not independent because he is the Company's CEO.  The TE Solar-designated members of the Board (Portes-Laville, Stoquart, and Fieldsend) and the GIP Sol designated members of the Board (Bram and Anschuetz) are likewise not independent.

77.     According to the 2023 Proxy, "[i]n accordance with the terms of the Affiliation Agreement, the Board currently has nine members, composed of our president and chief executive officer, five directors designated by HoldCo, and three independent directors." The 2023 Proxy continues:

> The Board has determined that three of our nine directors, Mr. Hegde, Mr. Louden, and Mr. McDaniel, each meet the standards for independence as defined by applicable listing standards of The Nasdaq Stock Market and rules and regulations of the SEC. The Board has also determined that Mr. Faricy, our president, chief executive officer, and chair of the Board, Mr. Anschuetz and Mr. Bram, as directors designated by GIP Sol pursuant to the Letter Agreement, and Mr. Fieldsend, Ms. Portes-Laville, and Mr. Stoquart, as directors designated by TE Solar pursuant to our Affiliation Agreement, are not "independent" as defined by applicable listing standards of The Nasdaq Stock Market.

78.     Each of the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, including because they face a substantial likelihood of liability, and so demand on the Board to institute this action is not necessary because such a demand would have been a futile act.

79.     The Director Defendants, together and individually, violated and breached their fiduciary duties of candor, good faith, and loyalty. Specifically, the Director Defendants knowingly approved and/or permitted the wrongs alleged herein and participated in efforts to conceal those wrongs. The Director Defendants authorized and/or permitted the Company to violate the law, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein. Accordingly, the Director Defendants could not fairly and fully prosecute such a suit even if they instituted it.

80.     The Director Defendants either knowingly or recklessly issued or caused the Company to issue the materially false and misleading statements alleged herein. For instance, Defendants Faricy, Anschuetz, Bram, Fieldsend, Hegde, Portes-Laville, and Stoquart all signed

the 2022 10-K that was materially false and misleading. The Director Defendants knew of the falsity of the misleading statements at the time they were made. As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

81.     As members of the Board charged with overseeing the Company's affairs, each of the Director Defendants had knowledge, or the fiduciary obligation to inform themselves, of information pertaining to the Company's core operations and the material events giving rise to these claims. Specifically, as Board members of SunPower, the Director Defendants knew, or should have known, the material facts surrounding SunPower's compliance with campaign finance and securities laws, and the accuracy of its public statements.

82.     Demand in this case is excused because each of the directors derive hundreds of thousands of dollars annually from the Company, control the Company, and are indebted to each other. These and other conflicts of interest have precluded the current directors from calling into question the Director Defendants' conduct or taking any remedial actions to redress the conduct alleged herein. Accordingly, the Director Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action due to their close relationship with, and indebtedness to, the Director Defendants named herein.

83.     All of the Director Defendants are subject to the Company's Code of Conduct.  The Code of Conduct goes well beyond the basic fiduciary duties required by applicable laws, rules, and regulations, requiring the members of the Demand Board to also adhere to SunPower's of business conduct. The Director Defendants violated the Code of Conduct because they knowingly or recklessly allowed the Company to violate the law.  All of the Director Defendants violated the Code of Conduct, including by refusing to take action to address the misconduct alleged herein.

As such, the entire Demand Board faces a substantial likelihood of liability for breaching their fiduciary duties, and therefore demand upon them is futile.

84.     None of the Director Defendants have taken any remedial action to investigate or redress the Company's losses and exposure due to their and the other Individual Defendants' misconduct.

85.     The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds *i.e.*, monies belonging to the stockholders of SunPower. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain officers of SunPower, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an Insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

86.     If there is no directors' and officers' liability insurance, then the Director Defendants will not cause SunPower to sue the Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event as well.

87.     Accordingly, a pre-suit demand on the current Board comprised of the Director

Defendants is futile and excused.

## **COUNT I**

**Against the Director Defendants for Violations of § 14(a)**
**of the Exchange Act, 15 U.S.C. § 78n(a) and Rule 14a-9 (17 C.F.R. § 240.14a-9)**

88.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

89.     Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

90.     Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

91.     Under the direction and watch of the Director Defendants, the 2023 Proxy failed to disclose, *inter alia*: (1) contrary to the their descriptions of the Board's risk oversight function and the Audit Committee's responsibilities, the Board and its committees were not adequately exercising these functions, were causing or permitting the Company to issue false and misleading statements, and thus the Defendants on the Board were breaching their fiduciary duties; and (2) the Defendants on the Board at that time who were breaching their fiduciary duties were

improperly interested in increasing their unjust compensation.

92.     The 2023 Proxy further failed to disclose that the Company was issuing false and misleading statements in violation of securities laws and had failed to establish or maintain adequate internal controls. As a result, the 2023 Proxy was materially false and misleading.

93.     In the exercise of reasonable care, the Director Defendants should have known that the statements contained in the 2023 Proxy statements were materially false and misleading.

94.     The misrepresentations and omissions in the 2023 Proxy were material to Company stockholders in voting on the proposals made therein. The misrepresentations and omissions were material to Company stockholders in voting on the matters set forth for stockholder determination in the 2023 Proxy, including but not limited to the reelection of certain Director Defendants and the approval, on an advisory basis, of the compensation of the Company's executives.

95.     The false and misleading elements of the 2023 Proxy led to, among other things, the election of multiple Director Defendants, including Defendant Faricy, which allowed them to continue to breach their fiduciary duties to SunPower.

96.     The Company was damaged as a result of the defendants' material misrepresentations and omissions in the 2023 Proxy.

97.     No adequate remedy at law exists for Plaintiff by and on behalf of the Company.

## <u>COUNT II</u>

### Against Defendants Faricy, Dundas, and Eby for
### Contribution Under §§ 10(b) and 21D of the Exchange Act

98.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

99.     The conduct of Defendants Faricy, Dundas and Eby as described herein, has

---

exposed the Company to significant liability under various federal securities laws by their misconduct.

100.    SunPower, Faricy, Dundas and Eby are named as defendants in the related Securities Class Actions that alleges and asserts claims arising under the federal securities laws. SunPower is alleged to be liable to private persons, entities and/or classes by virtue of many of the same facts alleged herein.

101.    If SunPower is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of Defendants Faricy, Dundas and Eby as alleged herein, who have caused the Company to suffer substantial harm through their misconduct. The Company is entitled to contribution and indemnification from the Individual Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing.

102.    As officers and directors, Defendants Faricy, Dundas and Eby had the power or ability to, and did, control or influence, either directly or indirectly, SunPower's general affairs, including the content of its public statements, and had the power or ability to directly or indirectly control or influence the specific corporate statements and conduct that violated the federal securities laws.

103.    The Individual Defendants are liable under §21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of any private right of action for contribution asserted pursuant to the federal securities laws.

104.    Defendants Faricy, Dundas and Eby have damaged the Company and are liable to the Company for contribution.

105.    As such, SunPower is entitled to receive all appropriate contribution or

indemnification from Defendants Faricy, Dundas and Eby.

## COUNT III

### Against the Individual Defendants for Breach of Fiduciary Duty

106.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    The Individual Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

108.    The Individual Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

109.    The Individual Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Individual Defendants breached their fiduciary duties of loyalty and good faith by allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

110.    Specifically, throughout Relevant Period, the Individual Defendants issued false and misleading statements failed to disclose material adverse facts about the Company's business and operations. Specifically, Defendants misled investors by failing to disclose that due to a material weakness in its internal control over financial reporting, the Company had inaccurately reported cost of revenue and inventory metrics and, as a result of the foregoing, the Company was reasonably likely to incur significant charges to restate prior reporting.

111.    As a direct and proximate result of the Individual Defendants' failure to fulfill their fiduciary obligations, the Company has sustained significant damages.

112.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.  As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs incurred in defending itself in the Securities Class Actions, exposing the Company to millions of dollars in potential class-wide damages in the Securities Class Actions, and damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT IV

### Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

114.    By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breach of their fiduciary duties.  In so doing, the Individual Defendants have each aided and abetted, conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

115.    Plaintiff on behalf of SunPower has no adequate remedy at law.

---

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## COUNT V

### Against the Individual Defendants for Unjust Enrichment

116.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, SunPower.

118.     The Individual Defendants either benefitted financially from the improper conduct, or received bonuses, stock options, or similar compensation from SunPower that were tied to the performance or artificially inflated valuation of SunPower, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

119.     Plaintiff, as a shareholder and a representative of SunPower, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits and other compensation procured by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

120.     Plaintiff on behalf of SunPower has no adequate remedy at law.

## COUNT VI

### Against the Individual Defendants for Abuse of Control

121.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

122.     The Individual Defendants misconduct alleged herein constituted an abuse of their control over the Company, for which they are legally liable.

123.     As a direct and proximate cause of the Individual Defendants' abuse of control,

the Company has sustained substantial damages.

124.    Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT VII

### Against the Individual Defendants for Gross Mismanagement

125.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

126.    The Individual Defendants, either directly or through aiding and abetting, failed to reasonably exercise their responsibilities and fiduciary duties with regard to prudently managing the assets and business of the Company in a manner consistent with the expectations and operations of a publicly held corporation.

127.    As a direct and proximate result of the Individual Defendants' gross mismanagement alleged herein, the Company has sustained and will continue to sustain substantial damages.

128.    Plaintiff on behalf of the Company has no adequate remedy at law.

## COUNT VIII

### Against the Individual Defendants for Waste of Corporate Assets

129.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

130.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time period in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

131.    As a result of the misconduct described above, the Individual Defendants wasted corporate assets by, *inter alia*: (i) paying and colleting excessive compensation and bonuses; and

(ii) incurring potentially millions of dollars of legal liability and/or legal costs, including defending the Company and its officers against the Securities Class Actions.

132.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

133.    Plaintiff on behalf SunPower has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Awarding money damages against all Individual Defendants, jointly and severally, for all losses and damages suffered as a result of the acts and transactions complained of herein, together with pre-judgment interest, molded in a fashion to ensure the Individual Defendants do not participate therein or benefit thereby;

B.    Directing all Individual Defendants to account for all damages caused by them and all profits and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct, including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds, and imposing a constructive trust thereon;

C.    Awarding punitive damages;

D.    Awarding costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 18, 2024                    **THE BROWN LAW FIRM, P.C.**

                                    By:   _/s/ Robert C. Moest_
**OF COUSEL:**                            Robert C. Moest, Of Counsel, SBN 62166
                                          2350 Wilshire Boulevard, Second Floor
                                          Santa Monica, CA 90403
                                          Telephone: (310) 915-6628
**RIGRODSKY LAW, P.A.**                    Facsimile: (310) 915-9897
Seth D. Rigrodsky                         Email: rmoest@aol.com
Timothy J. MacFall
Gina M. Serra
Vincent A. Licata                         *Attorneys for Plaintiff*
Samir Aougab
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
Email: tjm@rl-legal.com
Email: gms@rl-legal.com
Email: vl@rl-legal.com
Email: sa@rl-legal.com


**GRABAR LAW OFFICE**
Joshua H. Grabar, Esq.
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel:  267-507-6085
Email: jgrabar@grabarlaw.com

*Attorneys for Plaintiff*

DocuSign Envelope ID: 7EC0GB1E-F465-442E-9A88-37B96E318DB3

## **<u>VERIFICATION</u>**

I, Ashley Beall, have reviewed the allegations made in this Verified Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true, I further declare that I am a current holder, and have been a holder, of SunPower Corporation common stock at all relevant times.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this _____ day of January 2024.

1/17/2024

DocuSigned by:

*Ashley Beall*

05AB34773B5D4F8...

_____

Ashley Beall